## The WASHINGTON POST COMPANY, Plaintiff,

### v.

## U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.

### Civ. A. No. 80–1681.

United States District Court, District of Columbia.

Feb. 8, 1985.

Boisfeuillet Jones, Jr., Carol D. Melamed, Janet D. Milne, Washington, D.C., for plaintiff.

Mitchell R. Berger, Asst. U.S. Atty., Washington, D.C., for defendant.

### MEMORANDUM

HAROLD H. GREENE, District Judge.

The Washington Post Company brought this action under the Freedom of Informa-

tion Act, 5 U.S.C. § 552, seeking an order compelling defendants to produce for inspection and copying "Confidential Statement of Employment and Financial Interest" (HEW Form 474) filed by members of the advisory boards and committees of the National Cancer Institute, a division of the National Institute of Health. Each consultant who applies for a special government position, such as the peer review system at NCI, and who is not required to file public financial disclosure reports under the Ethics in Government Act, must complete a Form 474. Part I of this form requires each consultant to disclose all other federal and non-federal employment and to list "all organizations in which you, your spouse, minor child, partner, or an organization with which you are connected have financial interests which relate directly or indirectly to your consultancy duties."[1] The agency then reviews these statements to determine whether a conflict of interest exists.

Consultants who complete a Form 474 are given a limited pledge of confidentiality as follows:

*Information to Appointee:* Completion of this form is required for all experts and consultants and for other persons who work 130 days or less a year identified by the head of the principal operating component. The information to be furnished on this form is required by Executive Order 11222 and the regulations issued thereunder. The information you disclose will be used to determine whether a conflict exists between your employment and financial interests and the performance of your services for the Government. The information will be held in confidence and will not be disclosed except as the Chairman of the Civil Service Commission or the head of the principal operating component or des-

ignee may determine for good cause . . . Unless you provide the information requested on this form, the organization will not be able to utilize your services.

After this FOIA action was filed, the government agreed to release to the Washington Post the names of NCI consultants, their other federal employment, the results of HHS's review of the Forms (*i.e.,* whether HHS found a conflict of interest in an individual case), and the name of the reviewing official. HHS refused, however, to disclose the consultants' non-federal employment and the lists of their financial interests relating to their consulting duties. On December 4, 1980, this Court granted the government's motion for summary judgment, holding that the disclosure of the remaining information would constitute a clearly unwarranted invasion of personal privacy and was therefore protected from disclosure under Exemption 6, 5 U.S.C. § 552(b)(6).[2] In reaching that decision, the Court relied on *Association for Women in Science v. Califano,* 566 F.2d 339 (D.C.Cir. 1977), in which the Court of Appeals held the same Forms 474 to be privileged from discovery under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

The Washington Post appealed and the Court of Appeals reversed, stating that discovery of information under the Federal Rules and disclosure under Exemption 6 of the FOIA involve different issues, and that, although the conflict of interest information was not discoverable under the Federal Rules, it was not exempt from disclosure under Exemption 6. *Washington Post Co. v. United States Department of Health & Human Services,* 690 F.2d 252, 255 (D.C. Cir.1982). The court went on to hold, however, that the list of consultants' financial interests is "financial" information within the meaning of Exemption 4, and on that basis it remanded the case to this Court for

---

**1.** Form 474 requests the following financial information: the name of the organization, the kind of organization, the nature of the interest, and the name of the individual in whose name the investment is held. Consultants are not required to state the precise amount or monetary value of their interest.

**2.** Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

a determination whether disclosure of this information was likely to impair the government's ability to obtain similar information in the future.[3]

After the instant case was remanded, the Supreme Court issued its decision in *United States v. Weber Aircraft Corp.,* —— U.S. ——, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). In that case, the Supreme Court decided that confidential witness statements made to air crash safety investigators—which the Court of Appeals for this Circuit had previously held were privileged with respect to pretrial discovery in *Machin v. Zuckert,* 316 F.2d 336 (D.C.Cir. 1963)—are also protected from disclosure under Exemption 5 of the FOIA.[4] The Court reasoned that if litigants could obtain through the FOIA material that is normally privileged, it would produce the anomalous result that the FOIA could be used to supplement civil discovery—a construction of the FOIA which, it stated, it had previously rejected. 104 S.Ct. at 1494.[5]

■■■ The government now argues on the basis of *Weber,* that the confidential report privilege which protects Forms 474 from discovery also protects them from disclosure under the FOIA.[6] This Court agrees.

Exemption 4 of the FOIA protects from disclosure financial information which is "privileged or confidential." The Court of Appeals indicated in this case that, in light of the legislative history's explicit reference to particular privileges,[7] the two

---

3. The court further found that the consultants' non-federal employment was not "commercial or financial" information within the meaning of Exemption 4 and therefore not protected from disclosure. On March 9, 1983, the government provided the Washington Post with copies of all Forms 474 for NCI advisory committee consultants omitting only the list of financial interests.

4. Exemption 5 applies to documents that are "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."

5. Indeed, the Court expressed its disbelief that "Congress could have intended that the weighty policies underlying discovery privileges could be so easily circumvented." 104 S.Ct. at 1494.

6. Plaintiffs contend that the government has waived the issue of privilege under Exemption 4 because it failed to raise it initially. *Ryan v. Department of Justice,* 617 F.2d 781, 792 (D.C. Cir.1980). However, it appears that the Court of Appeals remanded this case for consideration of this theory of nondisclosure *if* the defendants raised the issue, which they did. See 690 F.2d at 267–68.

In any event, an agency may properly invoke an exemption for the first time on appeal or on remand because of a substantial change in the factual context of the case or because of an interim development in applicable legal doctrine. *Jordan v. United States Department of Justice,* 591 F.2d 753, 780 (D.C.Cir.1978); *see also British Airports Authority v. United States Department of Justice,* 530 F.Supp. 46, 49–50 (D.D.C.1981). In light of the Supreme Court's decision in *Weber Aircraft,* the interests of justice are best served if the government is allowed to argue ρn remand that the information is exempt from disclosure under Exemption 4 of the FOIA because it is "privileged".

7. The Senate Report accompanying Exemption 4 states that

[Exemption 4] is necessary to protect the confidentiality of information which is obtained by the Government through questionnaires or other inquiries, but which would customarily not be released to the public by the person from whom it was obtained.

S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965). Similarly, the House Report observes that the exemption

would assure the confidentiality of information obtained by the Government through questionnaires or through material submitted and disclosures made in procedures such as the mediation of labor-management controversies. It exempts such material if it would not customarily be made public by the person from whom it was obtained by the Government ... It would include information customarily subject to the doctor-patient, lawyer-client, or lender-borrower privileges such as technical or financial data submitted by an applicant to a Government lending or loan guarantee agency. It would also include information which is given to an agency in confidence, since a citizen must be able to confide in his Government. Moreover, where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations.

H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10, U.S.Code Cong. & Ad.News 2418, at 2427 (1966).

These portions of the legislative history discussing privileges, however, relate to an early version of Exemption 4 which applied to "other

words should not be treated as synonymous. *Washington Post Co., supra,* 690 F.2d at 267 n. 50. Thus, information which is not confidential under the test in *National Parks & Conservation Association v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974), may nevertheless be privileged and exempt from disclosure under the FOIA.[8] However, the Court of Appeals went on to warn that not every privilege recognized in civil discovery is necessarily to be applied as an absolute under FOIA,[9] but the discovery rules should be applied only "by way of rough analogies." *EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1976).[10] That reasoning seems to have been rejected in *Weber,* and this Court, of course, is obliged to follow the later *Weber* decision.

In *Association for Women in Science v. Califano, supra,* the court held that the "confidential report privilege" protects from discovery the same information that the Washington Post seeks in this FOIA

action—information concerning potential conflicts of interests provided by government consultants on Forms 474. The confidential report privilege, which has also been referred to as the required reports privilege and the official information privilege,[11] may be claimed only by the government and is based on the governmental interest in protecting the flow of information concerning the subject of the report in question. 566 F.2d at 343. This executive privilege, like the one at issue in *Weber,* is not novel nor has it ever been seriously challenged.

■ To be sure, the confidential report privilege is not specifically mentioned in the legislative history of the FOIA. However, it is clear, in light of *Weber,* that a FOIA exemption can incorporate other specific discovery privileges even though they are not explicitly identified by the Congress. *Weber, supra,* 104 S.Ct. at 1493–94.[12] In fact, the legislative history of the

---

information", rather than "commercial and financial" information only. Therefore, the citations to medical privileges and the attorney-client privilege, which are obviously not limited to commercial or financial information, more properly refer to factors that should be considered under other exemptions of the FOIA, e.g., Exemption 6. See *Board of Trade of the City of Chicago v. Commodity Futures Trading Commission,* 627 F.2d 392 (D.C.Cir.1980); *Brockway v. Department of Air Force,* 518 F.2d 1184 (8th Cir.1975).

**8.** Most Exemption 4 litigation has focused on the meaning of the word "confidential," and the word "privilege" has not generally been read to add much to the scope of Exemption 4. See *Freedom of Information Case List* (September 1984 Edition) at 266, J. O'Reilly, *Federal Information Disclosure* § 14.09. This Court has been unable to find any cases where documents which were held to be privileged, but not confidential, were exempted from disclosure under Exemption 4. However, at least two District Courts have made alternative holdings that information which was confidential was also privileged under the attorney work-product doctrine and the attorney-client privilege and thus protected from disclosure under Exemption 4. *Indian Law Resource Center v. Department of the Interior,* 477 F.Supp. 144, 148–49 (D.D.C.1979), and *Miller, Anderson, Nash, Yerke & Wiener v. United States Department of Energy,* 499 F.Supp. 767, 771–72 (D.Or.1980), respectively.

**9.** Indeed, the Court of Appeals cautioned this Court that if the issue were raised on remand, it should not automatically assume that because Form 474 is privileged under Rule 26(b)(1), it is also privileged under Exemption 4. 690 F.2d at 267. The court relied upon two earlier Supreme Court cases—*EPA v. Mink,* 410 U.S. 73, 78, 93 S.Ct. 827, 831, 35 L.Ed.2d 119 (1976), and *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979). The Supreme Court's more recent discussion of the relationship between the discovery rules and the FOIA exemptions in *Weber* has guided this Court's analysis.

**10.** Congress expressly included evidentiary privileges in Exemption 4 as well as in Exemption 5. *Washington Post Co., supra,* 690 F.2d at 258. Although *EPA v. Mink, supra,* and *Weber Aircraft, supra,* are both Exemption 5 cases, plaintiff concedes that the Supreme Court's analytical approach to the incorporation of discovery privileges into Exemption 5 applies equally in the Exemption 4 context. Plaintiff's Reply Brief at 6–8.

**11.** *Association for Women in Science v. Califano, supra,* 566 F.2d at 343. See also Note, *The Required Reports Privilege,* 56 Nw.L.Rev. 283 (1961), and Note, *Discovery of Government Documents and The Official Information Privilege,* 76 Columbia L.Rev. 142, 149–52 (1976).

**12.** The respondents in *Weber* relied upon dictum in an earlier Supreme Court case, *Federal*

FOIA indicates that Congress intended to incorporate governmental privileges where, as here, "confidentiality is necessary to ensure frank and open discussion and hence efficient governmental operations." *Id.* at 1495. The *Women in Science* court found that the disclosure of the Forms 474 very likely would impair the government's ability to acquire this information in the future. 566 F.2d at 346. For the reasons stated in *Weber,* the policies underlying this discovery privilege would be thwarted if a party could obtain through the FOIA information not discoverable under the Federal Rules.

This conclusion is bolstered by the Ethics in Government Act, 5 U.S.C.App. §§ 201 *et seq.,* which specifically exempts from its financial disclosure requirements, any part-time "special" government employee who is "not reasonably expected to perform the duties of his office or position for more than sixty days in a calendar year." 5 U.S.C.App. I § 201(h).[13] The House Judiciary Committee explained the reason for this exclusion as follows:

> The committee has been advised that this amendment has direct relevance to the operations of the Government. Several candidates for nomination to important Governmental advisory boards, who serve purely in a part-time capacity, requested that their nominations be withdrawn because of the public disclosure provisions. It was intended that no public disclosure be required in the case of these short term employees, and this

amendment assures that this intent is implemented.

H.R.Rep. No. 96–114(II), 96th Cong. 1st Sess. 10 (1979), reprinted in 1 U.S.Code Cong. & Ad.News 1979, p. 144, at 160. Disclosure of the financial affairs of these short-term advisory committees would contravene the intent of Congress to shield this information from public dissemination.

For the reasons stated, it is the Court's conclusion that, in view of *Weber Aircraft, Women in Science,* and the Ethics in Government Act, the documents at issue are privileged and exempt from disclosure under Exemption 4. Summary Judgment will therefore be granted to the government.

---

*Open Market Committee v. Merrill,* 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979), in which the court stated "that it is not clear that Exemption 5 was intended to incorporate every privilege known to civil discovery." The Court found that this statement provided little aid to respondents since it had concluded only that "a claim of privilege other than executive privilege or the attorney-client privilege is covered by Exemption 5 must be viewed with caution." *Weber, supra,* 104 S.Ct. at 1494, *quoting Merrill, supra,* 443 U.S. at 355, 99 S.Ct. at 2809. Here, as in *Weber,* the claim of privilege has been denominated one of executive privilege.

**13.** The NCI Committee consultants who are required to fill out a Form 474 perform approximately nine days of paid service annually.