**WASHINGTON POST COMPANY, Appellant,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.**

No. 85–5249.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 18, 1986.

Decided July 18, 1986.

---

Paul Mogin, with whom Kevin T. Baine, Boisfeuillet Jones, Jr. and Patrick J. Carome, Washington, D.C., were on brief, for appellant.

Mark E. Nagle, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees. Mitchell R. Berger, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees.

Before WALD, SCALIA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

Dissenting opinion filed by Circuit Judge STARR.

SCALIA, Circuit Judge:

The Washington Post filed this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1982), to obtain financial and employment information about scientific consultants employed by the National Cancer Institute ("NCI"), which is part of the Department of Health and Human Services ("HHS"). The Post appeals from the District Court's ruling that HHS need not disclose some of the desired information, because it was "privileged" "commercial or financial information" within the meaning of exemption 4 to FOIA, 5 U.S.C. § 552(b)(4). The principal issue presented is whether HHS raised the defense that the desired information was "privileged" under exemption 4 in a timely fashion.

I

On February 14, 1980, the Post submitted a FOIA request to HHS, asking for copies of certain financial disclosure statements ("Forms 474") that scientists who review grant applications for the NCI must submit to HHS. HHS denied the request, claiming that the Forms 474 were exempted from disclosure by exemption 6 to FOIA, which exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6). After exhausting its administrative remedies, the Post filed suit in the District Court for the District of

Columbia pursuant to 5 U.S.C. § 552(a)(4)(B).

Before the District Court, HHS asserted that the Forms 474 were covered not only by exemption 6, but also by exemption 4, because they contained "confidential" "commercial or financial information," 5 U.S.C. § 552(b)(4), and by exemption 3, because they were "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3). On cross-motions for summary judgment, the District Court rejected HHS's exemption 3 defense, holding that no statute specifically exempted the Forms 474 from disclosure; rejected the exemption 4 defense, holding that exemption 4 did not apply to the Forms 474, which contained "personal financial information as distinguished from economic data relating to corporations or other business entities"; and accepted the exemption 6 defense, holding that the public interest in disclosure of the Forms 474 was weaker than the consultants' privacy interests. The District Court therefore granted summary judgment in favor of HHS. *Washington Post Co. v. HHS,* Civil Action No. 80–1681, slip op. (D.D.C. Dec. 4, 1980).

The Post appealed, and this court reversed the District Court's exemption 6 holding, on the ground that disclosure of the Forms 474 would not constitute a "clearly unwarranted invasion of personal privacy"; we also reversed the District Court's holding that exemption 4 was inapplicable to the Forms 474, concluding that the Forms 474 contained "commercial or financial information" within the meaning of exemption 4. *Washington Post Co. v. HHS,* 690 F.2d 252 (1982) (*"Washington Post I"*). We therefore remanded the case to the District Court to assess HHS's contention that the Forms 474 contained information that was "confidential" under exemption 4. In dictum, however, we also noted our surprise that HHS had not asserted that the Forms 474 contained information that was "privileged" under exemption 4, and discussed the way in which we believed such an assertion ought to be analyzed "in case the issue [was] raised on remand." *Id.* at 267.

On remand, HHS not unreasonably took this dictum to be an invitation, and raised for the first time the exemption 4 "privilege" defense. In advancing this defense, HHS relied principally on this court's earlier decision in *Association for Women in Science v. Califano,* 566 F.2d 339 (D.C.Cir. 1977) (*AWIS*") which had held that Forms 474 were privileged from civil discovery under FED.R.CIV.P. 26(b)(1). Before the proceedings on remand had been completed, the Supreme Court decided *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 799, 104 S.Ct. 1488, 1493, 79 L.Ed.2d 814 (1984), which held that certain information protected by a "well recognized" civil discovery privilege was exempted from disclosure by exemption 5 of FOIA, 5 U.S.C. § 552(b)(5), which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." HHS thereafter relied on *Weber* to buttress its exemption 4 "privilege" defense.

The Post argued strenuously that HHS should not be permitted to raise a new defense of exemption so late in the day, citing this court's decisions in *Ryan v. DOJ,* 617 F.2d 781, 791–92 (D.C.Cir.1980); *Jordan v. DOJ,* 591 F.2d 753, 779–80 (D.C. Cir.1978) (en banc); and *Vaughn v. Rosen,* 523 F.2d 1136, 1143 (D.C.Cir.1975). The District Court disagreed, however, holding that *Weber* constituted a change in the law sufficient to come within an exception to the rule announced in those cases, and that this court's opinion authorized HHS to raise the exemption 4 "privilege" defense. *Washington Post Co. v. HHS,* 603 F.Supp. 235, 237 n. 6 (D.D.C.1985). The District Court proceeded to consider that defense on the merits, and concluded that the Forms 474 were privileged under exemption 4. It therefore granted HHS's motion for summary judgment and dismissed the action. The Post appeals, arguing both that HHS should not have been permitted to raise the exemption 4 "privilege" defense, and that in any event the District

Court incorrectly found the defense to be meritorious.

## II

█ It is common ground that the government ordinarily must raise all its claims of exemption in the original proceedings in district court, and may not thereafter assert new claims of exemption, either on appeal or on remand following appeal.[1] *See, e.g., Ryan,* 617 F.2d at 791–92. We have, however, noted two exceptions to this general rule: the extraordinary circumstance in which forbidding the government from advancing an untimely claim of exemption might result in the release of, for example, information compromising national security, *Jordan,* 591 F.2d at 780, or "sensitive, personal private information," *Ryan,* 617 F.2d at 792; and the circumstance in which the government "is forced to invoke an exemption [after the original proceedings in district court] because of a substantial change in the factual context of the case or because of an interim development in applicable legal doctrine," *Jordan,* 591 F.2d at 780. It has not been contended that the first of these exceptions is applicable. As to the second, we disagree with the District Court's conclusion that *Weber* was a change in the law sufficient to justify HHS's tardy assertion of its exemption 4 "privilege" defense. That such a defense was available was fully apparent from this court's 1977 decision in *AWIS,* as is shown by the fact that in *Washington Post I* —decided well before *Weber*—we expressed our puzzlement that HHS had failed to advance it in the original proceedings before the District Court. 690 F.2d at 267. It is clear, moreover, that HHS's decision to assert the defense on remand was not prompted by *Weber,* since that assertion was made before *Weber* was decided. *See* Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment at 4–5 (June 1, 1983).

█ Finally, we do not think that our dictum in *Washington Post I* can properly be considered an "extraordinary circumstance" justifying an exception to the rule that the government must assert all of its exemptions in the original proceedings before the district court. We do not agree with the dissent's conclusion that that dictum cannot "reasonably be read as anything other than a direction that the District Court consider the merits of a privilege claim should [HHS] choose to raise one on demand." Dissent at 209. The language in question consists of this court's instructions to the District Court as to the proper analysis of an exemption 4 "privilege" defense, *"in case the issue is raised on remand"* (emphasis added). That language can assuredly be interpreted as merely recognizing the *possibility* that an exemption 4 "privilege" defense might properly be raised on remand, and as inviting HHS to raise (and the District Court to consider) the defense only if its untimely assertion could be justified. That interpretation, albeit a narrow one, should have been preferred by the District Court (as it should be by the present panel), since the alternative "direction" which the dissent infers would have been a direction to contravene the law of the circuit. As the dissent properly observes, one ought to "act on the modest assumption ... that we fashion our opinions in conformity" with the law, Dissent at 210.

Nor do we agree with the dissent that the "efficiency concerns underlying" the requirement that the government assert its exemptions in a timely fashion are not applicable to this case. Dissent at 210. It is true, of course, that the parties have already litigated and the District Court has already decided the merits of the exemption 4 "privilege" defense, and thus that enforcement of the timeliness requirement at this stage in the proceeding spares them no inconvenience. But this will be true whenever a district court mistakenly per-

---

1. Although HHS contends that this rule prohibits only the untimely raising of a new numbered exemption, and not (what HHS did in this case) the untimely raising of a new *element* of a numbered exemption that has already been invoked, this contention is contradicted not only by common sense but also by this court's holding in *Vaughn,* 523 F.2d at 1143.

mits the government to assert an exemption for the first time on remand; surely it cannot be suggested that such errors ought never be corrected on appeal. The timeliness rule is concerned not just with efficiency in a given case, but also with efficiency in the long run, and it disserves this broader goal to permit untimely defenses, even after they have been argued, to prevail. Moreover, efficiency cannot be purchased at the expense of unfairness. The unfortunate status of the present case is attributable, first, to the government's failure to raise the "privilege" defense in the original proceedings, second, perhaps, to the failure of this court to make the import of its dictum in *Washington Post I* utterly clear, and, third, to the government's and the District Court's decision to give that dictum an interpretation that would place it in violation of our precedent. The only actor that cannot possibly be accused of any responsibility for the confusion is the Post, which defended the original proceedings on the basis of the arguments there raised and vigorously protested the introduction of new arguments on remand. It would be grotesque to present the Post with the bill for an entertainment which it alone insisted should not have been staged. We will not require this litigant, contrary to the well established law of this circuit, to overcome newly framed arguments on remand.[2]

\*   \*   \*   \*   \*   \*

The District Court's grant of summary judgment to HHS on the ground that the Forms 474 contain information that was "privileged" within the meaning of exemption 4 is reversed. The case is remanded to the District Court with instructions to determine whether the Forms 474 contain information that is "confidential" under exemption 4.

*So ordered.*

STARR, Circuit Judge, dissenting:

I respectfully dissent. In my view, the panel opinion in *Washington Post I* quite clearly invited the Government to assert an Exemption 4 "privilege" claim. The specific situation at hand presents precisely the kind of "extraordinary circumstances" that justify an exception to the general rule requiring the Government to assert all exemptions before appeal to this court. *See, e.g., Ryan v. Department of Justice,* 617 F.2d 781, 792 (D.C.Cir.1980).

The majority concedes, as it must, that *Washington Post I* invited the Government's claim of privilege. The relevant portion of that opinion began in the following way:

> The remaining issue is whether the list of financial interests is "privileged or confidential." The Government has not asserted that Form 474 is "privileged" within the meaning of Exemption 4. We are puzzled as to why not....

690 F.2d at 267 (footnote omitted). With this introduction, the opinion went on to provide several paragraphs of guidance on the privilege prong of the exemption, *"in case the issue is raised on remand." Id.* (emphasis added). I do not see how these instructions could reasonably be read as anything less than a direction that the District Court consider the merits of a privilege claim should the Government choose to raise one on remand. To be sure, the District Court might have surmised that we simply had not considered the general rule against raising additional exemption claims on remand. But the District Court's divination as to *our* reasons for inviting consideration of the privilege claim is irrelevant. First, I should have thought that this court, like Congress, is to be charged with knowledge of existing law, particular-

<hr>

**2.** The dissent believes there is an inconsistency between this conclusion and the dissent written by the author of this opinion in *Conafay v. Wyeth Laboratories,* 793 F.2d 350 (D.C.Cir.1986) (Scalia, J., dissenting), a case that involved assertedly erroneous denial of a motion for voluntary dismissal. Inconsistency with a position

that has been rejected by a panel of this court would hardly impugn the correctness of our judgment. The author resists the temptation to explain why no inconsistency exists, since this is not the place to engage in vindication of personal views.

ly the law of the circuit. *Cf. Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979) ("[I]t is always appropriate to assume that our elected representatives, like other citizens, know the law ...."). It is entirely proper for the District Court to act on the modest assumption that we know as much about our law as does Congress and that we fashion our opinions in conformity with that body of law. Second, regardless of the District Court's view about what assumptions may have animated our court, it is obligated to follow this court's instructions, especially when our system chooses not to favor the district courts with an opportunity to remand appellate opinions back upstairs for clarification.

The majority nevertheless reverses the District Court on the ground that we are not faced with a risk of compromising national security or sensitive personal information, or with a substantial change in the factual or legal context—situations previously recognized as justifying exceptions to *Ryan*'s general rule that an exemption claim is waived if not raised in the original District Court proceeding. *See* Maj.Op. at 208. The majority, with all respect, has adopted an unnecessarily wooden reading of our precedents. Unlike the law of the Medes and Persians, FOIA is a legal arena of unusual flexibility. For example, litigators in federal district court are blissfully free to advance exemptions never contemplated by the experts back home at the agency; the wondrous land of FOIA is a long way from *Chenery* territory. None of the cases cited by the majority, moreover, suggests that exceptions are available *only* in the two types of situations that the majority describes. Indeed, the general rule in this circuit is that waiver rules may bend in those "exceptional circumstances ... where injustice might otherwise result." *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1085 (D.C.Cir. 1984).

The injustice of the majority's inflexible application of the waiver rule in the setting before us is manifest. The District Court faithfully followed our opinion in *Wash-ington Post I,* which the majority now characterizes with beguiling ease as *dicta.* The parties, in turn, reasonably relied on this court's opinion in devoting months of their time, at considerable expense, to litigating the Exemption 4 privilege issue. The Post chose to proceed with that litigation, rather than simply resting on its objection that *Ryan* prohibits new exemption claims from being raised on remand. (Indeed, one member of today's majority has argued that, as long as an alleged error does not affect "the fairness of the outcome or the court's jurisdiction over the parties," a party who fails to rest upon an objection to an error should be deemed to have waived the objection. *Conafay v. Wyeth Laboratories,* 793 F.2d 350, 355 (D.C.Cir.1986) (Scalia, J., dissenting)).

In my view, the efficiency concerns underlying the *Ryan* rule were never intended to apply under such circumstances. *Ryan* itself, by providing for exceptions to the general rule, is a reaffirmation of the judiciary's commitment to sensible rules that make for the orderly and fair adjudication of FOIA issues. Today's majority prefers procedural purity to common sense, even though it is this court which beguiled the District Court and the litigators into devoting some months to indulging in what we now write off as a frolic and detour. We should have greater respect for the judicial process than to turn the relationship between the trial and appellate courts into a shell game. In short, I think it ill behooves us, having invited resolution of the Exemption 4 privilege issue, now to rely on a crabbed interpretation of our own housekeeping rule in order to say that we did not really mean it.