The FOUNDING CHURCH OF SCIENTOLOGY OF WASHINGTON, D.C., INC., Plaintiff,

v.

DIRECTOR, FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.

Civ. A. No. 78–0107.

United States District Court, District of Columbia.

Jan. 8, 1985.

William C. Walsh, Anthony Bisceglie, Jeffrey O'Toole, Washington, D.C., for plaintiff.

Stuart Licht, Anne Gulyassy, Janet McClintock, John Toothman, Richard Greenberg, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ARTHUR L. BURNETT, Sr., United States Magistrate.

Before the Magistrate is plaintiff's motion to compel discovery from the defendant Department of Justice as to its Criminal Division component. Specifically, on September 6, 1984 plaintiff, The Founding Church of Scientology of Washington, D.C., Inc., pursuant to Rule 37, Fed.R.Civ.P., filed a motion to compel discovery requesting an order requiring the Criminal Division to conduct a proper search for relevant documents, to produce documents defendant has located but decline to produce, asserting privilege, and to answer certain of plaintiff's interrogatories.

Some of the issues presented initially by the motion to compel have since been mooted by the defendant Department of Justice's subsequent actions. For example, the Department of Justice has advised in its opposition filed October 17, 1984 that the Criminal Division had consented to expand the scope of its search beyond the previously conducted FOIA searches, to include the records of the Internal Security Section, the Narcotics and Dangerous Drugs Section, the Organized Crime and Racketeering Section, the Brooklyn, N.Y., Miami and Tampa, Florida, and Los Angeles, California Strike Forces, the Office of Enforcement Operations, and the Office of International Affairs. At the hearing before the Magistrate on November 29, 1984 counsel for the defendant represented that the Criminal Division had completed its search of all the offices in issue except the Office of International Affairs. Counsel for the defendant represented that eight of the nine offices which plaintiff had request-

ed the Criminal Division to search had been completed and none had found any responsive documents. As to the remaining office, the Office of International Affairs, counsel represented the search was then in process and assured that if any responsive records were found, counsel would notify plaintiff and also supplement the answers to relevant interrogatories. (Tr. 79.)[1]

Another issue, since mooted, involved plaintiff's motion to require the Criminal Division to furnish an accounting of documents and records it had returned in 1980 to the originating agencies in connection with FOIA requests. Plaintiff has contended that the defendant should be ordered to provide a specific accounting of documents referred to other agencies. On this issue, the defendant responded in its opposition that the Criminal Division had referred the FOIA requests to the originating agencies for a direct response to the requestors. At oral argument on November 29, 1984 counsel for the defendant represented that in 1979 and 1980 individual Scientologists made numerous Freedom of Information Act requests to the Criminal Division for documents, and in processing the requests the Criminal Division determined that it had documents that had been originated in fourteen (14) other governmental offices. At that time, the Criminal Division referred those documents to the originating agencies or offices for their determination as to release. Counsel further represented that on May 5, 1983 the Department of Justice sent a letter to counsel for the plaintiff advising of the identity of the fourteen (14) agencies or offices and including copies of all the documents that had been referred to ten (10) of those agencies or offices. All of the documents for these ten (10) agencies or offices that had been referred out were provided to them at that time with the exception of one (1) Treasury Department document, for which the deliberative process privilege had been claimed in the FOIA release. Counsel further represented that there were four (4)

offices for which the processing had not then been completed, and assured the Magistrate—

"And we agree that we will make an accounting for those four. Those include the Civil Division of the Department of Justice, DEA, the Drug Enforcement Administration, the—those are the same agencies—the Executive Office for U.S. Attorneys, and the FBI. The largest number of documents involved are FBI; there are 73. I don't have a page count for the others, but it is not an inordinate amount of documents." Tr. 83–84.

In response to these representations, counsel for plaintiff stated that there might have been some confusion on this production and accounting for documents, stating, "I will endeavor to work this out. I don't think it's something that we need an order on now." Tr. 86. The Magistrate thus concludes that this issue is now moot.

Plaintiff also sought to compel production of a two (2) page letter, dated September 19, 1977, which was a response to a request for information regarding Internal Revenue Service electronic surveillance, which had been withheld on the basis of 26 U.S.C. § 6103 and the Privacy Act, 5 U.S.C. § 552a. Plaintiff urged that, at the very least, the defendant should disclose the name of the taxpayer to enable plaintiff to obtain a waiver for release of the information. With its opposition, the defendant, having received a waiver from one of the individuals referred to in the letter, after redacting the names of the other individuals, produced a copy of the letter, including the individual's name for which there had been a waiver, and the complete text of the letter. The defendant further observed that inasmuch as the letter merely confirmed that no electronic surveillance had been conducted on the listed individuals, the withheld names were not relevant. The Magistrate agrees and concludes that the motion to compel as to this document is now moot.

---

1. In their reply also, counsel for the plaintiff indicated their satisfaction with the defendant's agreement to revise its search for documents and to supplement its interrogatories and that these matters no longer required an Order of the Court for resolution.

Plaintiff also initially requested that the defendant be compelled to provide complete responses to supplemental interrogatories 1 and 2, asking respectively that the Criminal Division "identify all investigations of any nature initiated and/or participated in that involved plaintiff" and to identify "any investigation or intelligence gathering activities or programs not exclusively directed towards plaintiff ... that included the gathering of information about plaintiff." In response, the Criminal Division had initially stated:

"Inapplicable. See Response by Defendant Director of the FBI to Plaintiff's Supplement to First Set of Interrogatories to Defendants."

Defendant, in its opposition filed October 17, 1984, represented that it would file a further answer to these two interrogatories, stating

"Because the Criminal Division response is the same as the response of the FBI, it will prepare a supplement to its responses to Plaintiffs' Supplement to First Set of Interrogatories to Defendants, containing language found in the responses of the Director of the FBI."[2]

Finally, it is noted that the parties may have reached an accommodation on one additional discovery issue. Plaintiff requested that the Criminal Division be ordered to conduct a search of the file, Justice/CRM–006, "Information File on Individuals and Commercial Entities Known or Suspected of Being Involved in Fraudulent Activities" and Justice/CRM–019, "Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Interceptions." In support of this request counsel for the plaintiff asserted:

"A search of these files is sought because it cannot be determined from the declaration of Mr. Wood [Douglas S. Wood, Legal Support Services Attorney for the Criminal Division] that these systems were examined and because the contents of these systems may yield information probative of plaintiff's claims

that the defendant has created an incorrect characterization of the plaintiff as a fraudulent organization and has subjected its members to unlawful electronic surveillance."

With reference to the Justice/CRM–006 file, the defendant in its opposition stated that the Fraud Section had advised that the entire system had been lost. Counsel represented that an exhaustive search for it had been conducted without success and that they were advised that the system was probably lost during a reorganization of that Section in 1978. At the hearing on November 29, 1984 counsel further advised that there was no custodian of the file, which was one of the files maintained by the Office of Enforcement Operations, and which was either lost or discarded during a reorganization of that office in 1978. Counsel then further advised that to assist the Court, they would be willing to provide an affidavit from the responsible person in the Criminal Division describing as best they could what happened to that file, with as much information as available. The Magistrate interprets this commitment to include a description of the contents of that file to the extent anyone has a recollection thereof, whether the materials therein were copies of documents or records preserved in other files, whether the materials in that file were cross-referenced to another file, and the identity of any government officers or employees who have firsthand knowledge of the contents thereof and whether the file contained any information on the plaintiff or other churches and missions of Scientology. Such an affidavit would lay this issue to rest. The Magistrate thus concludes that the Criminal Division through a responsible official shall furnish such an affidavit or declaration within ten (10) days hereof.

■ With reference to the Justice/CRM–019 file, counsel did not further pursue this issue in their memoranda or at the hearing. The Magistrate concludes that since this file involved the submission of applications

---

**2.** The Magistrate will require, based on this assurance, that the supplemental answers be filed promptly after the filing of this Memorandum Opinion and Order.

to Federal judges for electronic interceptions, it is highly improbable that it would contain information relevant to the allegations made by the plaintiff in this case or reflect illegal activity or governmental misconduct. Furthermore, plaintiff has proferred nothing beyond sheer conjecture or speculation that this file would contain any information helpful to the plaintiff in this case or likely to lead to admissible evidence.[3] Thus, this aspect of plaintiff's motion to compel shall be denied.

This brings us to the most difficult and complex aspects of the motion to compel, i.e. the validity of the defendant's invocation of the attorney work product doctrine or privilege, the deliberative process privilege, and the informant's privilege. As to some of these documents, and redacted portions thereof, more than one privilege has been claimed by the defendant. Certain documents, the defendant claims, are protected from disclosure on more than one ground.

In general, plaintiff has asserted that the declarations of the officials invoking the privilege are too conclusory and general, the indices do not give sufficient detailed information and description pertaining to the documents to support the privilege claimed, that the procedures for invoking the privilege have not been properly followed, and that since allegations of government misconduct are involved and the factual issues in the case are complex, counsel for the plaintiff should be allowed to participate in the Magistrate's *in camera* examination of the documents, which have already been submitted by the Criminal Division. Plaintiff has urged that counsel's participation would sharpen the focus of the examination and advance the fulfillment of the adversary system, and that since each of these are qualified privileges, counsel could assist the Magistrate in assessing plaintiff's need for the information versus the defendant's claim to keep the information confidential and protected from disclosure.

■ The Magistrate, at this stage, rejects plaintiff's request for participation in the *in camera* process. The Magistrate is of the view that where privilege is asserted, the least intrusive means reasonably necessary to determine the validity of the claim should be followed. Counsel's participation should only occur after less intrusive methods have proved unworkable. *Black v. Sheraton Corp. of America,* 564 F.2d 531, 545 (D.C.Cir.1977). Cf. *Arieff v. U.S. Department of Navy,* 712 F.2d 1462, 1469–70 (D.C.Cir.1983). Further, this Magistrate has had substantial involvement in this litigation in resolving numerous prior discovery disputes and thus fully appreciates the factual and legal issues involved in this case. Thus, this Magistrate is of the view that he can capably evaluate the applicability of the privileges by the traditional approach to an *in camera* examination. If, after that examination, there are unresolved questions, the Magistrate has the power to require a further declaration or affidavit and more detailed elaboration of the grounds for the asserted privilege in an appropriate supplemental index. Within the framework of these principles, we now turn to the question of the validity of each of the asserted privileges, the general principles applicable thereto, and the results of this Magistrate's *in camera* examination of the documents at issue.

### The Attorney Work Product Doctrine

Plaintiff has asserted that the defendant has withheld portions of forty-four (44) documents on the basis of the work product privilege and that its claims are inadequate. Plaintiff asserts that the declaration of then Assistant Attorney General D. Lowell Jensen provided no indication of what litigation was involved or even what the general subject matter of the documents entailed, and that the index furnished shed no further light on the propriety of the claims.

---

**3.** Should plaintiff be able to present any specific factual information that this file contains any information relevant to the issues in this case or likely to lead to admissible evidence, it may file a motion to reconsider as to this issue, with such additional showing as it can then make.

Plaintiff further asserts that the index was strikingly similar to the one found to be deficient in *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980). Plaintiff concludes that because the work product privilege is limited to documents prepared in contemplation of litigation, citing *Jordan v. U.S. Department of Justice*, 591 F.2d 753, 775 (D.C.Cir. 1978) (en banc), the defendant should at least be required to provide further information as to exactly what litigation was contemplated.

Defendant has responded that plaintiff has cited no authority for its novel interpretation of the work product doctrine to require the party invoking the doctrine to provide further information as to exactly what litigation was contemplated. Defendant further asserts that the index entries clearly show that the documents in issue were prepared in connection with the criminal process and in anticipation of litigation. Defendant asserts that the plaintiff has failed to make the requisite showing, as set forth in Rule 26(b)(3) and *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), necessary to override the privilege. The Magistrate agrees after a reading of each and every page of each document for which the defendant has invoked the attorney work product doctrine.

■ In the volume submitted for *in camera* examination, the Magistrate has read word for word each of the documents under a total of seventy-one (71) tabs, some of the documents being several pages. The Magistrate is *completely satisfied from this review* that the attorney work product doctrine has been properly invoked. Even were the index description inadequate, the availability of the documents for review by the Magistrate would cure any deficiency in the declaration and index description. This is sufficient to distinguish *Coastal States Gas Corporation*, a case dealing

with the adequacy of the *Vaughn* index in a FOIA context.[4] It would be an unwarranted imposition upon counsel and the litigants they represent to require a further detailed supplemental index when it is clear from an examination of the documents themselves in an *in camera* examination that they, or the portions thereof withheld, are entitled to the protection of the work product doctrine.

■ Furthermore, the Magistrate's review of these documents indicates that they are only marginally relevant to the issues presented by the plaintiff in this litigation, if at all. The content thereof would not be of significant help to the plaintiff on the issues presented. Thus, in balancing plaintiff's need for these documents against the defendant's interest in protecting the documents under the work product privilege, the Magistrate concludes that the scale weighs heavily in favor of the defendant. Therefore, the motion to compel as to documents, or portions thereof, for which the defendant has invoked work product protection shall be denied.

### The Deliberative Process Privilege

In the recent case, *Northrop Corporation v. McDonnell Douglas Corporation*, 751 F.2d 395, p. 405, fn. 11, (D.C.Cir., 1984), a panel of our Court of Appeals stated:

"Assertion of the deliberative process privilege, like the state secrets privilege, requires a formal claim of privilege by the head of the department with control over the information. That formal claim must include a description of the documents involved, a statement by the department head that she has reviewed the documents involved, and an assessment of the consequences of disclosure of the information. *Garber v. United States*, 73 F.R.D. 364 (D.D.C.1976), *aff'd. on other grounds*, 578 F.2d 414 (D.C.Cir.1978). *See also Carl Zeiss [Stiftung v. E.B.*

---

**4.** Further, in that case, in lieu of *in camera* inspection, the Department of Energy had submitted an index of the withheld documents, along with affidavits from regional counsel in support of its decision not to release the memo-

randa. It was in this context that the Court found fault with the conclusory assertions of privilege as not sufficient to carry the Government's burden of proof in defending FOIA cases.

*Carl Zeiss* ], 40 F.R.D. 318; Wright & Miller § 2019. As with the state secrets privilege, State's claim of this privilege also fails on this procedural requirement."

In this case Assistant Attorney General D. Lowell Jensen stated in his Declaration:

"I have personally reviewed each document, and, for the reasons set out below, it is my opinion as Assistant Attorney General that each document is privileged from disclosure." (Paragraph 3.)

With reference to the deliberative process privilege, in Paragraph 5, Assistant Attorney General Jensen represented that each of the documents for which this privilege was being asserted was an internal Department of Justice communication reflecting advisory opinions, recommendations and deliberations which comprise an integral part of the process by which the Criminal Division's decisions and policies are formulated. For a seminal case setting forth the philosophy and underpinnings of this deliberative process privilege, also referred to as executive privilege, *see, Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 141 Ct.Cl. 38 (1958) (Mr. Justice Reed, Retired, sitting by designation, for the Court). He further stated in his Declaration:

"Disclosure of these documents could be expected to inhibit the candid exchange of ideas between persons in the Criminal Division responsible for formulating the legal and factual basis upon which our decisional and policy making functions depend and would also impair frank expression and discussion among those upon whom rests the responsibility for making the determinations that enable the Criminal Division to operate."

■ The quoted footnote from *Northrop Corporation, supra,* raises the question of whether the Attorney General himself must examine the documents for which the deliberative process privilege is being asserted, or whether the Criminal Division should be treated as a "department" for purposes of the principle enunciated therein. Of course, there is also another alternative—that is—the footnote may have overstated the need for the head of the department to review *all* deliberative process privilege material. It may be that where deliberative process privilege material also involves assertion of the executive privilege for highly sensitive policy making material, scrutiny by the head of the department may be required, but it can hardly be intended that deliberative process material generated at the working attorney staff level or by mid-level managers or administrators must be reviewed by the head of a department or agency. Such a requirement would be an unwarranted imposition on the time of the heads of departments and agencies, who need to be free to devote their time to major policy issues and the management of their departments and agencies. Thus, this Magistrate is of the view that the principles enunciated in *United States Department of Energy v. Brett,* 659 F.2d 154, 155 (TECA 1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 456 (1982), should be followed instead. There the appellate court held that the district court erred in ruling that the deliberative process privilege may be asserted only by the head of the agency, stating that *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), relied on by the district court, was inapposite, observing that *Reynolds* dealt with an absolute privilege for state secrets, not the deliberative process privilege.

Further, the *Brett* court observed that where a department or agency is willing to submit the documents at issue to the court for *in camera* examination, an affidavit or testimony from a responsible official of the department or agency "was unnecessary to assert the privilege effectively."[5] 659 F.2d at 155. It is also significant to observe that in *Black v. Sheraton Corpora-*

---

**5.** The *Brett* court further observed: "The rationale for the deliberative process privilege is its supposed avoidance of chilling effects on decision making. That goal is not furthered and could in fact be hindered by a requirement that the privilege be asserted in all cases by agency heads." 659 F.2d at 156.

*tion of America,* 564 F.2d 531 (D.C.Cir. 1977), in the context of a claim of executive privilege, the Court of Appeals for the District of Columbia stated:

"Since the district court would be able to examine the actual documents, it did not need an affidavit of the same degree of specificity as in a case where it was relying on the affidavit to decide whether valid grounds existed for assertion of the privilege *nor did the district court need the personal assurance of the department head as to the proper classification of each document....*" 564 F.2d at 543. (Emphasis added.)

The Magistrate notes that the panel in *Northrop Corporation, supra,* in its footnote 11, did not make reference to *Black,* nor to the qualification set forth in the quoted language above.

The Magistrate is of the view that *Brett* and *Black* provide the sounder approach for dealing with the deliberative process privilege. The Magistrate concludes that the representations by then Assistant Attorney General D. Lowell Jensen, when coupled with the availability of the documents themselves for *in camera* examination, provide a sufficient basis for the required determination of the validity of the assertion of the privilege in this case. *Accord, In Re Agent Orange Product Liability Litigation,* 97 F.R.D. 427, 429–30, 434–35 (S.D.N.Y.1983). See also Salzburg and Redden, Federal Rules of Evidence Manual 3d Ed. at 799, comments to Proposed Rule 509 (the Official Information privilege).

■ From the *in camera* examination, the Magistrate notes there were forty-four (44) separate documents for which the defendant claimed the deliberative process privilege either for the entire document or a portion thereof.[6] The Magistrate has carefully read each page of each document for which the deliberative process privilege has been claimed. Based on this review the Magistrate concludes that the privilege

has been validly invoked and that the material at issue clearly involves the deliberative process of government officials in the criminal process, which was, at the time, predecisional as to prosecution and other law enforcement decisions.

■ Further, the Magistrate has evaluated the content thereof in view of the issues presented in this litigation of alleged governmental misconduct and concludes that the material is marginally relevant, if at all. Nothing therein suggests bad faith on the part of governmental officials or conduct which would involve violation of the constitutional rights of the Church of Scientology and its members. Indeed, the documents reveal a scrupulous concern, in many instances, for First and Fourth Amendment considerations. Accordingly, the Magistrate concludes, in balancing the plaintiff's need against the defendant's interest in not disclosing this information, that the plaintiff has not shown an adequate need for the production of this material, the material is not of substantial relevancy and materiality to the issues in this case, and that the defendant has clearly shown by its declaration and from the documents themselves that they are entitled to the protection of the deliberative process privilege. Accordingly, the plaintiff's motion to compel as to these documents shall be denied.

### The Informant's Privilege

■ The Assistant Attorney General in his Declaration stated that some sixteen (16) documents contained factual information, either in whole or in part, from informants, who had furnished their information to the Criminal Division under circumstances which made it clear that confidentiality was expected as a condition to its delivery.[7] Where the entire document has been withheld, it has been represented that disclosure of the subject matter of the informa-

---

6. The Magistrate notes that the attorney work product doctrine was also invoked as to contents of these same forty-four documents.

7. The informant's privilege need not be invoked by the head of the agency. *See, Association for Women in Science v. Califano,* 566 F.2d 339, 348 (D.C.Cir.1977).

tion contained in these documents would compromise the identity of the person providing the information, with consequent adverse effects on law enforcement efforts. The informant's privilege not only protects the identity of the informant but also documents which by their very nature would reveal the confidential informant's identity. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).

The Magistrate has examined, in detail, each of these sixteen (16) documents and has determined that individual persons are identified therein in circumstances indicating that they are informants whose identities should be protected.[8] Further, the contents thereof do not contain information of significant relevancy to the issues in this case. The Magistrate concludes that disclosure would not be helpful to the plaintiff nor essential to a fair determination of the issues involved in this litigation. Thus, in balancing plaintiff's need against the defendant's interest in this qualified privilege, the Magistrate concludes that the plaintiff has failed to carry its burden sufficient to require disclosure. Thus, the plaintiff's motion to compel the documents for which the defendant has asserted the informant's privilege shall be denied.

However, there are four (4) documents for which the defendant, on June 15, 1983, sought protection from disclosure on the grounds that they contained redacted portions which, if disclosed, would reveal the identity and existence of ongoing criminal investigations and adversely affect law enforcement efforts by making known the targets of those investigations and the fact that they were under investigation. These documents were labelled C–432, C–432a at pg. 4, fn. 8, C–433 at pg. 2 and C–433b at pg. 4, fn. 8. It is now January 8, 1985. If these investigations have been concluded since June 15, 1983, and there is no need for withholding the redacted portions at this time, then they should be disclosed. If the defendant still invokes privilege as to these four (4) documents, within ten (10) days of this Memorandum Opinion and Order, it shall file a further affidavit and supplemental index describing the privilege and the factual bases therefor.

Based on the foregoing analysis, it is now hereby this 8th day of January, 1985,

ORDERED that plaintiff's motion to compel be and is hereby DENIED[9] except that:

1. Defendant shall file answers to supplemental interrogatories 1 and 2 within ten (10) days.

2. Defendant shall file a further affidavit concerning the disappearance or loss of the Justice/CRM–006 file and its contents, as required hereinabove, within ten (10) days.

3. Defendant shall file a further affidavit concerning the four (4) documents, redacted portions of which were withheld as of June 15, 1983 on the basis of ongoing criminal investigations.[10]

---

**8.** The allegation of government misconduct does not mandate disclosure, where the Magistrate can examine the documents *in camera* and determine if the requestor's needs versus the public policy reflected by the qualified privilege tips the scale towards disclosure.

**9.** In reviewing the documents as to each of the privileges involved, the Magistrate has closely scrutinized the documents or portions withheld to determine if the withheld information would be relevant to aid plaintiff to rebut the defendant's unclean hands defense in connection with the criminal prosecution of several Church of Scientology members between 1977 and 1981. The Magistrate observed no significant information which would be relevant or helpful to the plaintiff on this issue.

**10.** The documents which were submitted for *in camera* examination are hereby Ordered to be filed under Seal in the event there is subsequent judicial review of this Memorandum Opinion and Order.