**LITTON INDUSTRIES, INC., Plaintiff,**

v.

**LEHMAN BROTHERS KUHN LOEB INCORPORATED, Dennis Levine, Ira B. Sokolow, Robert M. Wilkis, Bank Leu International, Ltd., Bank Leu A.G., Bernhard Meier, John R. Lademann, Bruno Pletscher, Jean–Pierre Fraysse, Christian Schlatter, John Doe, Jane Doe and John Doe, Inc., Defendants.**

No. 86 Civ. 6447 (JMC).

United States District Court,
S.D. New York.

March 29, 1989.

Harvey A. Levin, Myerson Kuhn & Sterrett, Washington, D.C., for plaintiff.

James Nespole, Fulbright Jaworski & Reavis McGrath, New York City, for Sheldon Goldfarb.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

The objection of nonparty witness Sheldon I. Goldfarb to Magistrate Gershon's Order of February 16, 1989, is dismissed. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a).

## BACKGROUND

In 1986 defendant Dennis B. Levine, along with several other individuals, was charged by the Securities and Exchange Commission [the "SEC"] with illegal trading based on material nonpublic information ["insider trading"]. Pursuant to a Final Judgment entered by United States District Judge Richard Owen, Levine was enjoined from violating the securities laws and directed to disgorge assets of approximately $11.5 million to a court appointed receiver. Under the terms of the Final Judgment, Sheldon I. Goldfarb, an attorney with Reavis & McGrath (now known as Fulbright Jaworski & Reavis McGrath), was named as receiver and conservator of the disgorged assets.

During the course of his inquiries, Goldfarb interviewed and requested documents from Levine and other witnesses, visited Levine's apartment and obtained information and documents from two Swiss banks utilized by Levine in effectuating his insid-

er trading scheme. In addition, Goldfarb's counsel, James Nespole, Esq., either singularly or together with Goldfarb, conducted interviews with Levine's father, brothers, tax accountant, architect, interior designer and several other people who had significant contact with Levine in the previous six years. Pursuant to the terms of the Final Judgment, Goldfarb filed two reports with the United States Court for the Southern District describing his efforts to collect, liquidate and conserve Levine's non-exempt assets.

On October 9, 1987, plaintiff Litton Industries Incorporated ["Litton"], served Goldfarb with a deposition subpoena seeking his testimony and documents he obtained during the performance of his duties as receiver. On November 13, 1987, Goldfarb filed a motion for a protective order and to quash the deposition subpoena. On February 16, 1989, Magistrate Nina Gershon, to whom the case has been transferred for the purpose of supervising discovery, denied the motion. Goldfarb now appeals that decision claiming that discovery of the products of his investigation are precluded by either the work-product, deliberative process or law enforcement privileges. Litton opposes Goldfarb's motion.

## DISCUSSION

Appeals from decisions of magistrates are subject to the clearly erroneous standard of review. 28 U.S.C. § 636(b)(1)(A). In the past, the Court has held that "in reviewing discovery disputes, the Magistrate is afforded broad discretion, which will be overruled only if abused." *Citicorp v. Interbank Card Ass'n*, 478 F.Supp. 756, 765 (S.D.N.Y.1979); *see also Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 154 (W.D.N.Y.1982) (citing *Citicorp*, 478 F.Supp. at 765); *Empire Volkswagen, Inc. v. World–Wide Volkswagen*, 95 F.R.D. 398, 399 (S.D.N.Y.1982) (same).

■ The common law deliberative process privilege is an evidentiary privilege available to the government in the context of civil discovery. *See Jordan v. United States Dep't of Justice*, 591 F.2d 753 (D.C.

Cir.1978). "This privilege permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984) (citing NLRB v. Sears, Roebuck & Co., *421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975)*).

■ The privilege only applies, however, if the document is predecisional and is not purely factual in nature, but rather, contains opinions, recommendations and advice about agency policies. *See EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

■ The law enforcement investigative privilege is " 'based primarily on the harm to law enforcement efforts which might arise from public disclosure of government investigatory files.' " *Association for Women in Science v. Califano*, 566 F.2d 339, 343 (D.C.Cir.1977) (quoting *Black v. Sheraton Corp. of America*, 564 F.2d 531, 541 (D.C.Cir.1977)). As noted by the Court of Appeals for the District of Columbia " 'if investigatory files were made public ... the ability of any investigatory body to conduct future investigations would be seriously impaired.' " *Black*, 564 F.2d at 531 (quoting *Aspin v. Department of Defense*, 491 F.2d 24, 30 (D.C.Cir.1973)). As with the deliberative process privilege, however, the law enforcement privilege is one that may only be claimed by the government. *See Women in Science*, 566 F.2d at 343; *Black*, 564 F.2d at 541–42.

■ Magistrate Gershon concluded that Goldfarb's cooperation with the government did not make him the equivalent of the government. In addition, Magistrate Gershon found that there were no policy reasons which would justify extending these governmental privileges to a court appointed receiver. *See* Opinion and Order, at 3, 124 F.R.D. 75 (S.D.N.Y.1989). The Court agrees.

Goldfarb, in his capacity as receiver, was an agent of the court and not a government agent. Goldfarb's function was to marshal

and account for assets disgorged by Levine pursuant to a civil settlement. Goldfarb neither participated in the formulation of government policy, nor effectuated government regulations. In addition, as noted by Magistrate Gershon, plaintiff has specifically disavowed any interest in Goldfarb's deliberative or other thought processes and requests only those documents consisting of factual material.

*In re LTV Sec. Litigation*, 89 F.R.D. 595 (N.D.Texas 1981), cited by Goldfarb, is not controlling. In that case the court found that the investigative efforts of a "special officer," appointed by the court in accordance with an SEC consent decree, were protected from discovery. The court, however, based its decision on the attorney-client and work-product privileges finding that the plaintiffs "would be unable to obtain their requested discovery of [the special officer] were he either [a] conventional investigative counsel or an SEC investigator." 89 F.R.D. at 618. The court did not find that the special officer was the equivalent of the government and entitled to assert governmental privileges such as the due process and law enforcement investigative privileges. Thus, there is nothing erroneous in Magistrate Gershon's decision denying Goldfarb the use of either the deliberative process or the law enforcement privileges.

Finally, Goldfarb argues that information from his interviews are protected by the work-product doctrine because in the Final Judgment Judge Owen authorized him to "pursue such causes of action against third parties as [he] deem[ed] appropriate ... to recover [Levine's] assets." Order to Show Cause, Exh. A at p. 7, 86 Civ. 6447 (JMC) (S.D.N.Y. Feb. 27, 1989).

■ The work-product privilege grants a qualified immunity from disclosure to attorneys' recollections and mental impressions of their witness interviews as reflected in statements, memoranda, correspondence and briefs. *See Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). It is axiomatic that the work product privilege may only be invoked where it can be shown that the

materials sought to be protected were "prepared in anticipation of litigation...." Fed.R.Civ.P. 26(b)(3); *see also Hickman*, 329 U.S. at 511, 67 S.Ct. at 393.

■ Thus, the first question a court must address in determining whether the work-product privilege may be invoked is whether the materials sought to be protected were in fact prepared in anticipation of litigation. " 'The test to be applied is whether, in light of the nature of the documents and the factual situation in a particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.' " *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir.1983) (quoting 8 Wright & Miller, *Federal Practice and Procedure*, § 2024); *see also Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 89 (E.D.N.Y. 1981) (citations omitted).

Under this standard and in light of the facts listed above, Magistrate Gershon concluded that the interviews were not conducted in anticipation of litigation, but rather, in the course of Goldfarb's basic duties. The Court agrees. Clearly, Goldfarb conducted interviews and collected documents pursuant to Judge Owen's mandate to locate and conserve Levine's assets.

"The work-product immunity [from disclosure] requires a more immediate showing than the remote possibility of litigation." *Garfinkle v. Arcata Nat'l Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y.1974). While the material sought to be protected may have been prepared prior to the commencement of the lawsuit, *see Jones v. Jayfro Corp.*, No. 83 Civ. 3945, slip op., 1988 WL 26115 (E.D.N.Y. March 9, 1988), "litigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation." *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 143 (D.Del.1982); *see also United States v. Exxon Corp.*, 87 F.R.D. 624, 638 (D.D.C.1980) ("If the prospect of litigation is identifiable, but nonetheless still a contingency, the work product privilege may apply.")

*In re LTV Sec. Litigation,* 89 F.R.D. 595 (N.D.Texas 1981), relied upon by Goldfarb, is not to the contrary. In that case, LTV sought to protect the products of its in-house investigation into the corporation's accounting techniques. The investigation had been conducted after the SEC served LTV with subpoenas. The court, finding that the attorney-client and work-product privileges applied, noted that "[f]rom the moment the SEC investigation commenced … LTV was virtually assured of a civil suit." 89 F.R.D. at 612. In the instant action, the facts make clear that although litigation had been authorized by the Final Judgment, it was not anticipated. Thus, Magistrate Gershon's decision denying Goldfarb's motion to quash the nonparty deposition subpoena was not clearly erroneous or contrary to law. Accordingly, Goldfarb's objection the magistrate's order is dismissed.

## CONCLUSION

The objection of nonparty witness Sheldon I. Goldfarb to Magistrate Gershon's Order of February 16, 1989, denying him a protective order is dismissed. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a).