CHAMPION INTERNATIONAL
CORPORATION, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, et al., Defendants.
(Two Cases)

Nos. 87 Civ. 1634 (WCC), 88 Civ.
5041 (WCC).

United States District Court,
S.D. New York.

Nov. 16, 1989.

Reargument Granted and Opinion
Modified Jan. 4, 1990.

See also, D.C., 128 F.R.D. 608.

Anderson Kill Olick & Oshinsky, P.C., New York City, for plaintiff; Eugene R. Anderson, Kevin Walsh, Jay B. Spievack, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant, Liberty Mut. Ins. Co.; Peter J. McKenna, of counsel.

Gladstein & Isaac, New York City, for defendant, Northbrook Excess Surplus Lines Ins. Co.; Emily Diamond, of counsel.

Siff, Rosen & Parker, P.C., New York City, for defendant, Intern. Surplus Lines Ins. Co.; Robert F. Walsh, John H. Somoza, of counsel.

Ford Marrin Esposito & Witmeyer, New York City, for defendant, Continental Cas. Co., Victor G. Gleser, Charles A. Booth, David M. Somlyo, of counsel.

Bower & Gardner, New York City, for defendant, Unigard Sec. Ins. Co.; Sidney Rosen, of counsel.

Mendes & Mount, New York City, for defendant, Lloyds & London Market Insurers; Robert M. Flannery, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

### BACKGROUND

Plaintiff Champion International Corporation ("Champion") brought this action seeking indemnification from insurance company defendants ("the defendants")[1] under standard form Comprehensive General Liability (CGL) and Excess Liability policies (collectively, "the policies") for property damage arising from products sold by Champion. The defendants have denied coverage, in whole or in part, for claims arising from the settlement of two lawsuits against Champion, *Regency Park Townhouse Ass'n v. Blackwell Homes*, and *Larson Mfg., Inc. v. Champion Int'l Corp.*[2] The two underlying lawsuits involved the delamination of two Champion products, Malaysian Plywood, a plywood product finished with a mahogany veneer,

---

1. Only three defendants, Liberty Mutual Insurance Company ("Liberty Mutual"), Continental Casualty Company ("Continental"), and International Surplus Lines Insurance Company ("ISL-IC") have filed objections to the Order. The remaining defendants, Allstate Insurance Company as a successor to Northbrook Excess Surplus Insurance Company ("Northbrook"), Certain Underwriters of Lloyd's London ("Lloyds") and Unigard Mutual Insurance Company ("Unigard"), have joined in the objections of Liberty Mutual.

2. Champion settled the two claims for approximately three million dollars and is suing six insurers for repayment of that sum plus defense costs.

and Michigan Novoply, a particle board product.

The Court has twice denied summary judgment in this action, *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 701 F.Supp. 409 (S.D.N.Y.1988) and *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 721 F.Supp. 594 (WCC) (S.D.N.Y.1989). Familiarity with these opinions is presumed.

On March 31, 1989, Champion served upon each of the defendants identical copies of thirty-eight document requests. Each of the defendants responded to the document requests, objecting to substantially all of the requests and refusing to produce documents other than the policies and claim and underwriting files. Champion later revised its request to eight demands.

The Court referred Champion's motion to compel discovery to Magistrate Michael H. Dolinger pursuant to 28 U.S.C. § 636(b)(1)(A). The action is presently before the Court on the defendants' objections to the oral Discovery Order of Magistrate Dolinger, dated September 14, 1989 ("the Order"), which granted plaintiff's discovery requests as to five categories of documents and denied defendants' cross-motion for sanctions.[3] Defendants dispute both the form and substance of the Order. The Court hereby affirms the Magistrate's disposition as modified.

## DISCUSSION

The statutory provision governing referrals of non-dispositive matters to a Magistrate states that:

> [a] judge [of the district court] may reconsider any pretrial matter under this subparagraph (A), where it has been shown that the Magistrate's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); *see Ehret v. New York City Dep't of Social Servs.*, 102 F.R.D. 90 (E.D.N.Y.1984). A magistrate's report resolving a discovery dispute is afforded substantial deference and therefore, "a litigant who seeks to overturn a magistrate's discovery order 'bears a heavy burden.'" *Empire Volkswagen, Inc. v. World–Wide Volkswagen, Corp.*, 95 F.R.D. 398, 399 (S.D.N.Y.1982) (quoting *Citicorp v. Interbank Card Ass'n*, 478 F.Supp. 756, 765 (S.D.N.Y. 1979)), *aff'd*, 814 F.2d 90 (2nd Cir.1987); *see Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., et al.*, 125 F.R.D. 51 (S.D.N.Y. 1989).

### Objections as to Form

 Defendants first dispute the form of Magistrate Dolinger's Order, urging that the Court treat the oral rulings as preliminary and direct the Magistrate to enter a written order. Defendants also assert that the Magistrate erred in entertaining the merits of Champion's revised demands. Applicable case law establishes that an oral determination may constitute a final order and that a determination may be made without a formal written request. *See Penthouse Int'l, Ltd. v. Playboy Enter.*, 663 F.2d 371, 388 (2d Cir.1981) ("The fact that the ... order was oral rather than written, and that it was not entered pursuant to a formal written Rule 37(a) motion, does not deprive it of any of its binding force and effect."); *Ehret v. New York City Dep't of Social Servs.*, 102 F.R.D. 90, 91 (E.D.N.Y.1984) ("The Court also concludes that [the] Magistrate['s] oral determinations constitute an order.")

The Magistrate acted only after a thorough hearing at which all parties were given an opportunity to be heard and at which extensive testimony was presented concerning the relevance and burden of the requested documents. Moreover, the Magistrate's order was recorded by the court reporter. Contrary to defendants' contention, the 87–page transcript is not an "amorphous record" but contains obvious rulings in pages 72 through 87 which begin as follows:

> Magistrate Dolinger: Okay. Let's dispose of a few items anyway. There are

---

**3.** Magistrate Dolinger reserved decision on two additional matters which have since been decided and to which objections have been filed. The Court awaits the submissions of all parties before considering those matters.

a few that I will ask some additional work on. First of all ...

Although an oral determination may, by its nature, be less organized and less precise than a written order, the Magistrate's decision to rule from the bench was not only appropriate but conserved the substantial judicial time which would have been spent memorializing the hearing.

■ The Order identifies the following five categories of documents which the defendants must produce: (1) claims manuals discussing the disputed policy provisions for the time period of coverage (Tr. at 72) [4]; (2) how-to-sell instructions or guidelines for the time period of coverage (Tr. at 72); (3) drafting history documents (Tr. at 72); (4) loss runs for the time period starting from coverage on forward (Tr. at 74); and (5) document retention or destruction policy documents (Tr. at 75).

Despite defendants' assertion that the rulings lack specificity and definition as to subject matter, it is well-settled that in "[c]omplex litigation [which] often involves a large number of documents, the individual identity of each of which is unknown until disclosure ..., common sense dictates that requests framed in terms of categories or types of documents are sufficient." *United States v. Int'l Business Machs., Corp.*, 83 F.R.D. 97, 107 (S.D.N.Y.1979) (citing *Connecticut Mut. Ins. Co. v. Shields*, 17 F.R.D. 273, 276 (S.D.N.Y.1955)). In light of Magistrate Dolinger's explanation that "how to sell" documents are "memoranda if such there be that essentially convey advice to sales personnel as to how to sell certain types of policies" (Tr. 29), the Court deems defendants' claimed confusion as to its meaning disingenuous.

As to defendants' assertion that the rulings fail to articulate a defined time frame, the Court finds the Magistrate's reference to the "time period of coverage" sufficient. Each insurer is responsible for its own "time period of coverage" which begins with the effective date of the policies.

Drafting history of policy provisions and even amended versions is also sufficiently clear to enable compliance. Retention or destruction policies and loss runs are defined from the time period of ·coverage forward.

With respect to locale of discovery from Liberty Mutual, the record indeed lacks an express limitation to materials solely from its home office in Boston, Massachusetts. Nonetheless, the Court construes the record to imply this limitation. The form of the rulings is therefore not improper on its face, nor are the rulings themselves so ill-defined that they are contrary to law.

*Objections as to Substance* [5]

■ Defendants contend that extrinsic evidence is irrelevant to the issue presented in this action, namely, what constitutes the "trigger of coverage." They rely on *Uniroyal, Inc. v. The Home Ins. Co.*, 707 F.Supp. 1368 (E.D.N.Y.1988), which applied the Second Circuit's decision in *American Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760 (2d Cir.1984) to the trigger-of-coverage issue. In construing a similar policy for the purposes of deductibles, not property damage, the Second Circuit held that, under New York law and the plain meaning of the CGL, coverage is triggered when there is real "injury in fact" during the policy period. *Id.* at 763. In reaching this conclusion, the Second Circuit believed the policy to be susceptible of only one interpretation and therefore ascertained the trigger of coverage without resort to extrinsic evidence. *Id.* at 765; *accord Abex Corp. v. Maryland Casualty Co.*, 790 F.2d 119, 127–28 (D.C.Cir.1986) (extrinsic evidence of intent irrelevant where court adopts the plain meaning analysis). Defendants urge that although extrinsic evidence may be relevant to the "injury in fact" determination, it is irrelevant to the "trigger of coverage" legal question.

---

4. References to "Tr. ——" are to pages of the Transcript of the September 14, 1989 hearing before Magistrate Dolinger.

5. Because the Magistrate declined to compel production at this time of documents relating to affirmative defenses, the Court rejects defendants' objections to the possible ensuing conflict among the parties.

While this may be accurate, Champion has, nonetheless, alleged sufficient facts to distinguish this action. Although Champion may be unable to prove that defendants made representations which conflict with the plain meaning of the policy's coverage, the Court must allow Champion to try. *See Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983) (summary judgment precluded where "[defendant] submitted affidavits of the drafters of the industry-wide standardized CGL clause asserting an explication completely at variance from [plaintiff's] construction of the contract"). In its second Opinion and Order denying Unigard's motion for summary judgment, the Court acknowledged that it had previously "[p]ermitted plaintiff the opportunity to discover information which may create an issue of fact concerning the trigger 'occurrence.'" *Champion Int'l Corp. v. Liberty Mut. Ins. Co.,* 721 F.Supp. 594, 596 (S.D.N.Y.1989). Magistrate Dolinger similarly acknowledged that the discovery sought by Champion might facilitate the interpretation of the disputed provisions and might clarify policy ambiguities. Because the policy in question is not susceptible of only one reasonable interpretation, the Court may look to extrinsic evidence of the parties' intent and their communications, as well as rules of construction, to discern the contract's meaning. The Magistrate did not rule contrary to law.

■ Defendants also object to the discovery of drafting history documents, instructions to sales personnel on how to market and sell the policies and claims manuals, claiming that the subjective, uncommunicated, unilateral intent of the defendants is immaterial to the issue of contract interpretation. Defendants rely on *Schering Corp. v. Evanston Ins. Co.,* Docket No. L–97311–88 (N.J.Super.), to support this contention that internal documents are immune from discovery. Champion claims that *Schering* was wrongly decided and offers additional cases for its contrary assertion that the material is relevant to interpretation of a insurance policy. In *United States Fidelity & Guar. v. Colorado Nat'l Bank,* No. 86–Z–1033 (D.Col. Aug. 15, 1989), Magistrate Abram found "training manuals, claim manuals, company policy memoranda and correspondence" directly relevant to the interpretation of ambiguous policy terms. The court further directed production of drafting history documents. In *Allied–Signal, Inc. v. Abbille–Paix Reassurance, et al.,* Docket No. MRS–L–226–88 (N.J.Super., Sept. 6, 1989), the court required the insurance company defendants to produce claims manuals and other interpretive material, reasoning that:

> [w]e can get some useful production of the insurance companies' position with respect to the historical development of their policies[,] with respect to the meaning of their policies and with respect to negotiations with this insured, and with other insureds that may be truly useful in trying to sort out what the policy term means....

*Id.* at 128. The court continued that when dealing with a complicated organization, such as a large insurance company,

> ... knowing what the internal understanding was might inferentially have some bearing on what the external manifestation was likely to have been.... and from a discovery point of view that, it seems to me, is sufficient justification for including these documents.

*Id.* at 130–31.

Magistrate Dolinger similarly believed the material to be relevant, having stated at the hearing:

> Magistrate Dolinger: To the extent you have a dispute as to the meaning of a normal contract interpretation, you look to the meaning as understood by the party at the time they negotiate the contract.... Assuming there is some documentation, let me repeat it again, in Liberty's files that amounts to an agreement in effect with Champion's interpretation of the dispute provision, why shouldn't Champion have access to those documents?

(Tr. at 27–28). The Court agrees that inquiries concerning the drafting history of the provisions in question, how-to-sell instructions and claims manuals are clearly

germane to the interpretation of such policies.

■ Moreover, Champion points the Court's attention to interrogatories served in *American States Ins. Co. v. Maryland Casualty Co.*, Docket No. 87–70353 (E.D. Mich.), in which Liberty Mutual demanded drafting history documentation. Insofar as this constitutes a concession on the part of Liberty Mutual as to the material's relevance to coverage disputes, the sole remaining issue relates to the burden of production.■ However, as Continental insists, there appears to be no sound reason to require drafting history documents from excess carriers whose policies typically follow the form of the primary carrier and whose liability is dependent upon that of the primary carrier. Thus, excess insurers are not compelled to produce drafting history documents.

Defendants' next submit that the Magistrate should have stricken the document demand on its face as an abuse of the discovery process and ordered sanctions. Because defendants failed to make a proper evidentiary showing at the hearing as to burden and abuse before Magistrate Dolinger, these allegations lack merit. In fact, throughout the hearing, counsel for Liberty Mutual answered inquiries regarding burden in terms of balancing the marginal relevance, conceding the lack of burden with respect to several categories of documents (Tr. at 29 & 32). Because all defendants had the opportunity to present evidence both orally and in writing to Magistrate Dolinger and because they failed to make a sufficient evidentiary showing, the Magistrate's rulings were neither clearly erroneous nor contrary to law.

## CONCLUSION

For the reasons discussed above, Magistrate Dolinger's September 14, 1989 Discovery Order compelling the production of five categories of documents is affirmed as modified.

SO ORDERED.

## ON MOTIONS FOR REARGUMENT AND CLARIFICATION

Having affirmed as modified Magistrate Dolinger's Discovery Order of September 14, 1989, the Court now considers defendant Liberty Mutual Insurance Company's ["Liberty Mutual"] motion for reargument and modification as well as requests for clarification submitted by defendant Continental Insurance Company ["Continental"] and plaintiff Champion International Corporation ["Champion"]. For the following reasons, Liberty Mutual's motion is granted and the Opinion and Order is hereby modified and both Continental's and Champion's requests are denied.

## BACKGROUND

This Court has now issued four Opinions in this action whereby Champion seeks indemnification from various insurance companies for monies paid in the settlement of two insurance claims. The facts of the case have been fully stated in the previous Opinions, familiarity with which is presumed.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court referred all discovery disputes in this action to Magistrate Michael H. Dolinger. After a full hearing, Magistrate Dolinger issued an oral Discovery Order which granted plaintiff's discovery requests as to five categories of documents and denied defendants' cross-motion for sanctions. Upon defendants' objections to the Magistrate's Order, the Court evaluated the Order pursuant to the "clear error" standard of review for non-dispositive motions contained in 28 U.S.C. § 636(b)(1)(A).

The Court affirmed the Order's mandate that defendants produce 1) claims manuals, 2) how-to-sell instructions, 3) drafting history documents, 4) loss runs, and 5) document retention or destruction policies, see p. 64. However, the Court exempted excess insurers from producing drafting history documents.

Liberty Mutual, the primary carrier, now moves for reargument and modification of one portion of the Court's Opinion and Order. Both Continental and Champion seek to clarify other portions of the Opinion.

## DISCUSSION

*Liberty Mutual's Motion*

Local Rule 3(j) permits reargument only when a moving party can show that there are factual "matters or controlling decisions" which the Court "overlooked" in deciding the underlying motion. *See Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb, Inc.*, 1989 WL162315, 1989 U.S. Dist.Lexis 9145, 9–10 (S.D.N.Y. Aug. 4, 1989). Because Liberty Mutual has made such a showing, its motion for reargument is granted and the Opinion and Order is hereby modified.

In its Opinion deciding the appeal of the Magistrate's Order, the Court affirmed the Magistrate's position that drafting history documents are sufficiently relevant to the interpretation of the policies in this action to order production. After it concluded that such information was relevant, the Court continued:

> Moreover, Champion points the Court's attention to interrogatories served in *American States Ins. Co. v. Maryland Casualty Co.*, Docket No. 87–70353 (E.D. Mich.), in which Liberty Mutual demanded drafting history documentation. Insofar as this constitutes a concession on the part of Liberty Mutual as to the material's relevance to coverage disputes, the sole remaining issue relates to the burden of production.

Liberty Mutual asks the Court to modify its Opinion by omitting this language.

Liberty Mutual first argues that plaintiff should not have been permitted to supplement the record after the matter was fully submitted for the Court's consideration and that the Court should have "invited" a response if it had intended to rely on the belated submission. While Champion's letter was sent after the appeal of the Order

was fully submitted, the Court, believing it pertinent to the dispute and acknowledging the fact that the interrogatories had only recently come to Champion's attention, was not compelled to disregard it. But more importantly, the Court did not rely on the submission in finding drafting history documents relevant, but merely noted Liberty Mutual's prior discovery demand in *American States*. As Liberty Mutual concedes, "[t]he omission of this portion of the Opinion will not affect the substance of the Opinion since the Court had already found drafting history documentation relevant." Memorandum in Support of Motion for Reargument and Modification at 4. Furthermore, Liberty Mutual received Champion's letter to the Court on the same day the Court received it and failed to notify the Court of its intent to reply. While it is the practice of this Court to call for responses, it is not its duty. Liberty Mutual had ample time to contact the Court or to submit the reply which would have consisted of no more than a one-page letter.[1]

Finally, Liberty Mutual attacks the substance of the Court's statement that Liberty Mutual had demanded "drafting history documentation." Liberty Mutual correctly characterizes Champion's description of the interrogatories as calling for *documentation* misleading. Interrogatory 49 did not seek documentation, as Champion suggested, but sought the identity of persons who drafted the policy language at issue in that case.

Nonetheless, Champion has now tailored its argument to reflect the true nature of interrogatory 49, to identify and presumably take deposition discovery of persons familiar with the drafting history of their policy language. There appears no reason to seek the identity of "each person from 1965 to the present who has drafted your policy language with respect to...." other than to depose those persons as to the drafting history of the relevant policies. Thus, the Court remains convinced that the

---

1. Liberty Mutual's contention that the Court unjustifiably considered a single discovery demand served seven years ago in another action in another district to constitute a concession is without merit.

interrogatory recognizes the relevance of drafting history documentation.

Accordingly on reconsideration, the Court grants Liberty Mutual's motion for reargument and the November 16, 1989 Opinion is modified to read as follows:

> The efforts of Liberty Mutual in seeking the identity of the policy drafters, in an apparent effort to discover the drafting history, arguably constitutes a concession on the part of Liberty Mutual as to the relevance of drafting history documentation. But because the Court has previously found such material relevant without relying on the *American States* demand, it does not do so now.

*Continental's Request for Clarification*

■ Continental seeks clarification of that portion of the Court's November Opinion that states:

> However, as Continental insists, there appears to be no sound reason to require drafting history documents from the excess carriers whose policies typically follow the form of the primary carrier and whose liability is dependent upon that of the primary carrier. Thus, excess insurers are not compelled to produce drafting history documents.

Continental asks this Court to exempt excess carriers from producing claims manuals and how-to-sell instructions in addition to the explicit exclusion from producing drafting history documents, claiming that the same reasoning applies to all three types of discovery material. The Court disagrees. Although the drafting history documents are not relevant where the policies follow the form of the primary carrier, claims manuals and how-to-sell instructions are germane to the interpretation of the policies which were sold by each excess carrier to Champion.

Continental further asserts that because it made no "grand coverage determination," an examination of claims manuals and how-to-sell instructions can not reveal the inconsistencies that Liberty Mutual seeks in requesting such material. The Court disagrees because the mere denial of coverage in this action entitles Champion to conduct discovery to attempt to demonstrate inconsistencies between Continental's present position and interpretive positions it has taken in the past.

In its reply, Champion objects to the Court's exempting excess carriers from producing drafting history documents, claiming that, contrary to Continental's representation, "none of the excess carriers, with the possible exception of Lloyd's, 'follow form.'" Because this is a factual dispute which cannot be determined on the present submissions, the Court requests that Magistrate Dolinger conduct a hearing on this issue to determine which excess carriers, if any, "follow form" so that they may be exempted from producing drafting history documents.

*Champion's Request for Clarification*

Champion requests the Court to extend discovery beyond Liberty Mutual's Boston Home Office. Because the discovery ordered by the Magistrate and affirmed by this Court is extensive, the November Opinion's Boston limitation on discovery shall remain, subject to reconsideration upon completed discovery. This limitation refers only to the Magistrate's September 14, 1989 Order and does not affect Magistrate Dolinger's October 17, 1989 Order that Liberty Mutual produce the claims files relating to the Larsen and Regency Park matters located in both its Boston headquarters and New York offices. Because that Order required production by October 27, 1989, the Court assumes that Liberty Mutual has by now complied.

## CONCLUSION

For the reasons discussed above, Liberty Mutual's motion for reargument and modification is granted and Champion's and Continental's requests for clarification are denied.

SO ORDERED.